## Commonwealth v. Bloom

*Thomas J. Williams, III, Deputy District Attorney*, and *LeRoy S. Zimmerman, District Attorney*, for Commonwealth.
*Arthur K. Dils*, for defendant.

CALDWELL, *J*., July 11, 1975—Defendant was convicted by a jury of operating a motor vehicle under the influence of liquor and involuntary manslaughter. He has filed a motion for new trial in which he complains of the following:

(1) The admission in evidence of the results of a blood alcohol test.

(2) The charge of the court on the law concerning involuntary manslaughter arising from the operation of a motor vehicle while intoxicated.

## ADMISSIBILITY OF THE BLOOD TEST

At the hearing on the petition for suppression of the results of the blood test, no testimony was taken as the facts were not alleged to be in dispute. Defendant's petition did not support an order of suppression and, in fact, alleged facts which would render the results of the blood test admissible:

"3. The blood was taken without the benefit of a search warrant, consent or authorization. *The blood was taken without the knowledge of the Commonwealth and the prosecuting officer.*" (Emphasis supplied)

The court was informed by the district attorney that the blood test was done by hospital personnel in

connection with determining the anesthesia to be used in an emergency operation required by defendant immediately following the fatal collision in which he was involved. Defense counsel himself acknowledged the blood test was done by a technician mainly through the insistence of an intern:

"MR. DILS: No, sir. I think it was mainly through the insistence of an intern. He said, 'Do the blood test,' and they have a machine down there that evidently is made by Dupont that scans this blood and can perform multiple tests and it performed an ethyl alcohol test. They didn't advise the defendant what was going on, that it could be used against him in a criminal prosecution and in fact they didn't even tell him what they were doing; they just took the blood. *At that point they alerted the police and the police then arrested.*" (Emphasis supplied)

In light of these circumstances, we treated the situation as one wherein the blood was drawn as a routine medical procedure and not at the request of the police or other law enforcement authority. Because of the self-defeating allegation in the petition and the remarks of counsel, there was no issue presented at the hearing and the request to suppress was denied as being unfounded:

"THE COURT: All right. On the motion to suppress it is my judgment that so long as the blood was not taken at the request of the police, that it was taken in the normal course of events, it could be used as evidence and we deny the motion to suppress."

In 1961 the United States Supreme Court rendered a landmark decision in the area of search and seizure in the case of Mapp v. Ohio, 367 U.S. 643 (1961). This decision held that the Fourteenth Amendment of the United States Constitution pro-

hibits the introduction in State criminal trials of evidence seized in violation of the Fourth Amendment. However, the Supreme Court of Pennsylvania has ruled that the prohibition against unreasonable searches and seizures goes only to police and governmental authorities, and does not affect evidence obtained by private citizens. By coincidence, this holding was announced in a case involving a blood sample that had been taken as a matter of hospital routine and not for the purpose of obtaining evidence against the patient. In Commonwealth v. Tanchyn, 200 Pa. Superior Ct. 148, 188 A. 2d 824 (1963), the court held that a blood sample taken in such circumstances was admissible, at pages 151-52:

"It is our opinion that there was no violation of the fourth Amendment in this case because the seizure of appellant's blood was not made by state officials but was performed by private individuals, to wit, the hospital personnel. Whether the appellant impliedly consented to the taking of the blood by the hospital technicians is immaterial. What was done was for the benefit of the appellant and we assume that if he had been entirely normal he would have willingly consented to the procedure, just as nearly every person does when he enters a hospital or doctor's office for care and treatment. No agents or servants of the Commonwealth of Pennsylvania were present nor did they in any way direct or control the decision of the doctors or technicians to take blood from the appellant."

Based on the aforesaid holding, we find no merit concerning the motion to suppress.

## THE CHARGE OF THE COURT

The Crimes Code of December 6, 1972 (no. 334), sec. 504, provides as follows concerning involuntary manslaughter:

"A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person."

Under this section, the crime of involuntary manslaughter occurs whenever a death is the direct result of a lawful or an unlawful act which is done recklessly or with gross negligence. According to the comments of the Joint State Government Commission, the Crimes Code re-enacts the crime of involuntary manslaughter without substantial change from the prior law.

All of the physical and circumstantial evidence in this case indicated that defendant's car was in the wrong traffic lane of a two-lane highway when the violent head-on collision occurred which caused the death of the other driver. The court charged the jury on the elements of the crimes of operating a vehicle under the influence of intoxicants and involuntary manslaughter. Following these instructions, the comment now objected to by defendant was made as follows:

"Now if you conclude that the defendant was operating his car at the time under the influence of intoxicating liquor, then I think you would also be able to find that he was acting in a grossly negligent manner in operating his motor vehicle, which is a lawful act, on the highway at that time. I think the one would have to follow the other. Since driving under the influence is a crime and is illegal, I don't see how the driving of a car, which is a lawful act, could be anything but a grossly negligent act having been done under such circumstances."

The specific objection of defendant is that this

comment expressed the court's opinion on defendant's guilt, and precluded the jury from a free decision. Defendant did not contend that this was an incorrect legal statement, and we believe the law to be that driving on the wrong side of a highway while intoxicated is either a reckless or grossly negligent act. Thus, we find no error in informing the jury that *if* they concluded defendant was intoxicated, they would also be able to find that the operation of a motor vehicle was a grossly negligent or reckless act under the circumstances. Having been found guilty of operating his vehicle under the influence at the time of the collision, it is difficult to perceive how defendant could expect to escape responsibility for the death of an innocent motorist, particularly where the evidence indicated that defendant was solely at fault in the accident.[*]

Considering the evidence in the case, we believe this was fair comment to aid the jury in understanding its options and was not couched in language which precluded the jury from exercising its judgment. Where the legal consequences of a set of circumstances call for a conviction, we think it proper, if not required, that the jury be so instructed.

## ORDER

And now, July 11, 1975, defendant's motion for new trial is denied. We direct that a pre-sentence report be prepared by the Pennsylvania Board of Probation and Parole and thereafter defendant shall appear for sentencing at the call of the district attorney.

---

[*]The results of the blood test were .25 percent.